32 C.C.P.A.(Patents)

### Application of CHECHOT.

### Patent Appeal No. 5008.

Court of Customs and Patent Appeals.
April 9, 1945.

Norbert E. Birch, of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

The Board of Appeals of the United States Patent Office having affirmed the examiner's rejection of all the claims, numbered 7 to 12, inclusive, of appellant's application for patent for a method of treatment of hydrocarbon oils, appellant appeals to this court seeking review and reversal of the board's decision.

In his brief appellant states:

"The invention relates to the recovery of oil-soluble sulfonates from acid treated hydrocarbon oil, and resides more particularly in a process of removing oil-soluble sulfonates from an aqueous solution of water-soluble sulfonates initially employed in extracting the acid treated oil.

"In the acid refining of hydrocarbon oils, especially lubricating oils or medicinal white oils, the oil stock is contacted with sulfuric acid, whereby there is formed an oil-insoluble acid sludge which is separated from the treated oil by decantation or other means. The oil, as a result of the acid treatment, retains in solution a quantity of oil-soluble sulfonic acids which may be removed by various methods.

"One method for accomplishing such removal comprises neutralizing the oil with a basic solution, such as sodium hydroxide, and thereafter washing the neutralized oil with an aqueous solution of water-soluble petroleum sulfonates to extract from the oil its content of oil-soluble sulfonates. Having obtained by this process an aqueous solution of water-soluble sulfonates containing the extracted oil-soluble sulfonates, it becomes necessary to provide a method by which the oil-soluble sulfonates may be separated from the aqueous solution of water-soluble sulfonates.

"In accordance with applicant's invention, this is accomplished by adding to the mixture a lower aliphatic alcohol such as methyl alcohol in a quantity sufficient to precipitate from the aqueous solution, a concentrate of oil-soluble sulfonates. The resulting concentrate is then separated from the aqueous solution of water-soluble sulfonates by decantation, and the alcohol thereafter is recovered from the solution by distillation."

Claim 7 reads as follows:

"7. The process of removing oil-soluble sulfonates from an aqueous solution of water-soluble sulfonates, which comprises admixing said solution with a low boiling aliphatic alcohol to precipitate therefrom a concentrate of oil-soluble sulfonates, and separating said concentrate of oil-soluble sulfonates from the solution containing the water-soluble sulfonates."

Claim 9 specifies that the water-soluble sulfonate is a petroleum gas oil sulfonate. Claim 11 specifies that the alcohol is methyl alcohol. Claims 8, 10, and 12 specify the removal of the alcohol by distillation. Aside from these limitations, claims 8, 9, 10, and 12 do not differ in meaning from claim 7.

Three patents were cited as references, viz.:

Bransky, 1,396,399, November 8, 1921.
Beard et al., 1,997,566, April 16, 1935.
Bird, 2,028,185, January 21, 1936.

There seems to be a disagreement between appellant and the board with respect to certain facts, particularly with regard to the Bird patent, and it is not altogether clear just how much weight the board gave to the other references.

It does not appear to be questioned that both the Bransky and the Beard et al. patents disclose, as is stated in substance in the brief of the Solicitor for the Patent Office, the treatment of hydrocarbon oil with sulfuric acid to precipitate the water-soluble sulfonates and then apply a solution of such sulfonates to the oil to extract the oil-soluble sulfonic compounds. It appears to be agreed also that Beard et al. further disclose a treatment of the resulting mixture of water-soluble and oil-soluble compounds to separate these constituents so that the water-soluble elements may be again used to extract more oil-soluble compounds. The board defined the showing of Bransky and Beard et al. as "a disclosure of broad conception," and continued:

"* * * It is our opinion that Bird satisfies the terms of the claims in that beginning line 51, second column, page 1, and extending through the first column of page 2, he proposes to treat the aqueous suspension of apparently water-soluble and oil-soluble sulfonates with methyl, ethyl or isopropyl alcohol. Upon standing the mass appears to separate into three layers. The bottom layer is believed to contain the oil-soluble sulfonates described as an aqueous water-white bottom layer, lines 7 to 12. A middle layer said to be viscous tar appears to form on top of the bottom layer. This layer is regarded as immaterial to the question before us, but the third or uppermost layer seems to consist of alcohol and according to applicant's theory it would contain water-soluble sulfonates to the exclusion of oil-soluble sulfonates apparently contained in the bottom layer. The alcoholic mixture is then treated by distilling off the alcohol as in applicant's case, line 16."

The text of the specification referred to by the board as beginning in line 51 of the Bird patent reads in part as follows:

"The top layer in the sludge dilution step is called 'washed acid sludge'. It is neutralized with sodium carbonate or hydroxide or other alkali or ammonia. An oxygenated organic solvent such as methyl, ethyl or isopropyl alcohol is added to the neutralized sludge until the mixture contains above about 30 to 60% alcohol. During this operation the temperature is preferably kept at substantially room temperature although higher or lower temperatures may be used.

"Upon standing a separation occurs and after 3 to 10 hours an aqueous water-white bottom layer is formed. This consists mainly of a super-saturated solution of inorganic salts which sets to a crystalline mass on longer standing or on cooling. A layer of viscous tar forms above this bottom layer. The uppermost layer consists of a solution of purified alkali sulfonates in alcohol. This layer is separately withdrawn. The alcohol may be recovered therefrom by distillation and the solution remaining contains alkali sulfonates of markedly improved properties with respect to color, solubility and wetting power when compared to the sulfonates prepared directly by neutralizing acid sludge. * * *"

Appellant takes the position that the board was confused in its interpretation of the above quoted disclosure, and, therefore, erred in applying it to the claims on appeal. Briefly it is contended that the Bird patent is concerned solely with the recovery of water-soluble sulfonates from acid sludge in which no oil-soluble sulfonates are present; that "At no place does that patent disclose the separation of oil-soluble sulfonates from water-soluble sulfonates"; that appellant recovers the water-soluble sulfonates disclosed in Bird and then proceeds to utilize them for the extraction of oil-soluble sulfonates from a particular oil after which he separates the extracted oil-soluble sulfonates from the water-soluble sulfonates, thus disclosing a process embracing "two principal steps beyond the furtherest step disclosed by Bird."

We think it must be conceded that the board's discussion of the Bird disclosure above quoted is not altogether clear, at least it is not so to us, but we do not feel assured that the board erred in stating any of the essential facts.

The brief of the Solicitor for the Patent Office expresses the belief that appellant is in error in asserting, in substance, that Bird does not teach the use of alcohol on a mixture of oil-soluble and water-soluble sulfonates "to precipitate out the former," and in this connection points out that Bransky describes the same kind of sludge which Bird treats as containing both water-soluble and oil-soluble sulfonic compounds.

The examiner's analysis of the claims in his statement following the appeal to the board has been very carefully studied, in the light of appellant's comments thereon. It seems to us to be quite clear and we take the liberty of quoting the following from it:

"If claim 7, for example, is analyzed in connection with the references, the anticipation will be obvious. The claim is divided into the quoted sections as follows:

"Claim 7—*'The process of removing oil-soluble sulphonates from an aqueous solution of water-soluble sulphonates—'*

"Bird is concerned with a directly analogous process, i. e., the removal of oily impurities from an aqueous solution of water-soluble sulphonates. Further Bransky and Beard et al disclose the exact type of mixed solution recited in the claim and no invention would be involved in applying the purification technique of Bird to such solution ot remove the oil-soluble sulphonates.

"*'—which comprises admixing said solution with a low-boiling aliphatic alcohol to precipitate therefrom a concentrate of oil-soluble sulphonates—'*

"Bird follows this exact procedure in that he adds a low-boiling aliphatic alcohol to the solution of water-soluble sulphonates to precipitate oily impurities. See Bird, page 2, col. 2, line 71 to page 3, col. 1, line 9.

"*'—and separating said concentrate of oil-soluble sulphonates from the solution containing the water-soluble sulphonates'*

"Bird discloses separation of the precipitated matter and the remaining solution of water-soluble sulphonates. See Bird, page 2, col. 2, line 74 to page 3, col. 1, line 9; also page 2 col. 1, lines 7 to 15.

"Thus it is evident that the claim is unpatentable over the references.

"In the same manner, all the other claims are considered equally unpatentable. These claims contain limitations all of which are met by the references. Thus:

"Claim 8 specifies the additional step of distilling alcohol from the purified solution of water-soluble sulphonates. This is shown by Bird, page 2, col. 1, lines 15 to 21. This same limitation is found in claims 10 to 12.

"Claims 11 and 12 specify the use of methyl alcohol. Bird discloses methyl alcohol on page 3, col. 1, line 22." (Italics quoted.)

As indicated above, the board placed greatest emphasis upon the Bird patent, but it stated in next to the last paragraph of its decision "* * * While it is conceded Bird does not set forth the principal [sic] and process in such simple and direct terms as expressed by applicant, we believe his procedure accomplishes such result, and in accordance with the terms of the claims," and the decision of the examiner was affirmed generally, thus impliedly endorsing the latter's application of the Bransky and Beard et al. references.

In view of the state of the prior art, we are not convinced that appellant is entitled to an award of invention for his process as defined in the claims.

The decision of the board is affirmed.

Affirmed.